IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JEANETTE LYNN OVERTON
TAYLOR,

    Plaintiff,

v.    CV 407-182

BP EXPRESS, INC, et al,

    Defendants.

O R D E R

Plaintiff Jeanette Lynn Overton Taylor filed the captioned case asserting claims of sex discrimination in employment under Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e - 2000e-17, as well as state law claims for assault and battery, and the intentional infliction of emotional distress. The case is presently before the Court on the Motion to Dismiss by Defendants BP Express, Scott Kirby, and Wayne Castine. (Doc. no. 5.) On September 30, 2008, the Court converted Defendant's Motion to Dismiss into a Motion for Summary Judgment based on both parties' reliance on documents

outside of the pleadings. (Doc. no. 19.) Upon consideration of the record evidence, the briefs submitted by counsel, and the relevant law, Defendants' converted Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Defendant BP Express, Inc. ("BP Express") is a common motor carrier that provides transportation to intermodal shippers involved with inland transportation to and from marine ports and intermodal depots across the Southeast. (Aff. of Castine ¶ 3.) In order to provide this service, BP Express enters into equipment lease agreements with "owner/operator truckers" to haul loads between the Georgia Ports Authority and BP Express's terminal in Port Wentworth, Georgia. (Id. ¶ 4.)

On or about June 5, 2006, BP Express entered into an equipment lease agreement ("Lease Agreement") with Plaintiff to become an owner/operator trucker to haul ship containers for BP Express. (Id. ¶ 5.) Pursuant to their agreement, Plaintiff, or Contractor, as she is referred to in the Lease Agreement, agreed to "rent, lease, and deliver to BP Express" a 1996 Freightliner truck she owned for use in BP Express's hauling business. (Lease Agmt. ¶ 3.)

The Lease Agreement designated Plaintiff as an Independent Contractor. (Id. ¶ 21.) Specifically, the lease agreement provided that

> The parties intend to create by this Agreement the relationship of COMPANY and INDEPENDENT CONTRACTOR and NOT that of EMPLOYER and EMPLOYEE. Neither the CONTRACTOR, nor his agents, servants or employees are to be considered employees of BPXP at any time or for any purpose.

(Id.) The contract specifically provided that Plaintiff shall determine "the method, means, and manner of performing the provisions of this Agreement." (Id. ¶ 8.) Plaintiff had the right of refusal with respect to any particular dispatch. (Id.) Plaintiff could hire drivers, helpers, and other persons to assist her in the performance of her services to BP Express. (Id.) Plaintiff was compensated at a flat rate per transport. (Aff. of Castine ¶ 9.) BP Express did not guarantee that Plaintiff would receive any minimum number of loads, nor did it guarantee that Plaintiff would make a profit from her working relationship with BP Express. (Lease Agmt. ¶ 24.) BP Express did not provide Plaintiff employment or retirement benefits, nor did it withhold any employment-related taxes on Plaintiff's behalf. (Aff. of Castine ¶¶ 10-11.)

The terms of the agreement provided that Plaintiff was responsible for the cost of operating her truck, as well as

3

paying for fuel, tax, equipment, associated fees, repairs, and fines. (Lease Agmt. ¶ 7.) Plaintiff was also responsible for paying insurance premiums on her vehicle. (Id.)

However, Plaintiff was required to maintain the BP Express logo on both doors of her vehicle. (Aff. of Plaintiff ¶ 18.) The Lease Agreement required that the use of her vehicle was to be restricted to BP Express hauling. (Id. ¶ 18; Lease Agmt. at 5.) Plaintiff was prohibited from using her truck to haul for other companies. (Aff. of Plaintiff ¶ 18.) Plaintiff derived her primary income from her earnings at BP Express. (Id. ¶ 17.)

The working relationship between Plaintiff and BP Express was terminated on July 25, 2006 by her supervisor, Scott Kirby, after Plaintiff had been working about seven weeks. (Id. ¶ 10-12.) Kirby's decision was affirmed by Wayne Castine, the BP Express Terminal Manager. (Id.) According to Plaintiff, during this time, she was subjected to sexual harassment from Kirby. (Id. ¶ 15.) Plaintiff claims she was terminated because she rejected Kirby's advances. (Id. ¶ 13.) As a result, Plaintiff filed suit against BP Express, Inc., Castine, and Kirby.[1]

---

[1] In Plaintiff's Response Brief to Defendants' Motion to Dismiss, Plaintiff acknowledged that only BP Express, Inc. is liable to her

In their Motion for Summary Judgment, Defendants argue that Plaintiff is prohibited from maintaining her Title VII claim because she was not an "employee" of BP Express as defined by the statute. See 42 U.S.C. § 2000e(f) (defining an "employee" as "an individual employed by an employer"). Defendants argue that Plaintiff worked as an independent contractor and is not entitled to the protections of Title VII. Thus, the legal determination of Plaintiff's employment status is central to this case. If the facts, when viewed in the light most favorable to the Plaintiff, demonstrate that Plaintiff is an employee, she may proceed with her Title VII claim. If, on the other hand, the facts compel the conclusion that she is an independent contractor, summary judgment is proper.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of fact and the movant is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317,

---

under Title VII. Plaintiff withdrew without prejudice any claims she alleged against Defendants Castine and Kirby.

322-23 (1986). In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Summary judgment is not appropriate ". . . if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In response to Plaintiff's motion for summary judgment, the Clerk issued a Griffith[2] notice on September 30, 2008. (Doc. no. 20.)

### III. DISCUSSION

#### A. Employee/Independent Contractor Determination

The protection against sex discrimination provided by Title VII extends only to employees and is not afforded to independent contractors. See Garcia v. Copenhaver, Bell & Assoc., MD's, P.A., 104 F.3d 1256, 1259 (11th Cir. 1997;

---

[2] Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam).

6

see also Spirides v. Reinhardt, 613 F.2d 826, 829 (D.C. Cir. 1979). A person's employee status under Title VII is a question of federal law that is properly decided by the Court at the summary judgment stage of litigation. See Cobb v. Sun Papers, Inc., 673 F.2d 337, 339 (11th Cir. 1982) (holding that the employee status under Title VII is a question of federal law); Lockett v. Allstate Ins. Co., 364 F. Supp. 2d 1368, 1737 (M.D. Ga. 2005) (noting that the question of a plaintiff's employment status is properly considered at the summary judgment stage).

Rather than relying solely on the limited statutory definition of "employee," the Eleventh Circuit has adopted a hybrid economic realities test to determine whether a worker is an employee or an independent contractor. See Cobb, 673 F.2d at 340-41; Cuddleback v. Fla. Bd. of Educ., 381 F.3d 1230, 1234 (11th Cir. 2004). Specifically, the Eleventh Circuit has instructed that "it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative." Cobb, 673 F.2d at 341. Thus, the Court will consider the common law principles of agency, the Defendant's ability to exert control over Plaintiff, and finally, the Court will

7

consider the economic realities of the Plaintiff's situation in light of the first two factors.

B.   Common Law Agency Principles of Agency

The Eleventh Circuit has established eleven common law principles that determine whether a person is an independent contractor or an employee:

> (1) the kind of occupation; whether the work is done under direction of a supervisor or done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or individual furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment; whether by time or by the job; (6) the manner in which the work relationship is terminated ; i.e., by one or both parties, with or without notice and explanation;(7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer";(9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Cobb, 673 F.2d at 340. Applying these common law principles to the situation at hand, the Court finds that Plaintiff is an independent contractor.[3]

The first, second, third, fourth, fifth, sixth, seventh, ninth, tenth, and eleventh factors point very

---

[3] Plaintiff argues that instead of applying the eleven common law principles of agency set forth by the Eleventh Circuit in Cobb, the Court should apply the factors set forth in Nat'l Neutral Ins. Co. v. Darden, 503 U.S. 318 (1992) to determine whether Plaintiff is an employee. The Darden decision, however, dealt solely with the ERISA definition of employee. The Eleventh Circuit, when faced with the Title VII definition of employee, has continued to apply the factors established in Cobb. See Cuddleback, 381 F.3d at 1234. Thus, Darden is not controlling here.

clearly to the conclusion that Plaintiff is an independent contractor. The first factor considers whether Plaintiff performed the "type of work done by a specialist without supervision." Here, Plaintiff received little to no supervision for her work at BP Express. Both parties agree that Scott Kirby was Plaintiff's supervisor. However, Kirby simply provided Plaintiff with the appropriate documents and pin numbers to make her hauls. (Aff. of Plaintiff ¶ 3.) Kirby did not oversee the details of her job performance in making the hauling trips.

This kind of interaction, in which the supervisor does not actually supervise how the work is to be done, but is solely interested in the fact that the work is completed, is "typical" of how an employer might deal with an independent contractor. See Cobb, 673 F.2d at 342; see also Holloman v. Ne. Ga. Area Dev. Comm'n, 740 F. Supp. 1571, 1577 (M.D. Ga. 1990) (finding that the plaintiff was an independent contractor, in part, because there was no direct supervision of her day to day activities). Thus, the first factor denotes an independent contractor relationship.

The second factor, the skill required for this occupation, requires a finding that Plaintiff is an independent contractor. First, a significant amount of

9

skill is required to operate a truck. See Broussard v. L.H. Bossier, Inc., 789 F.2d 1158, 1160 (5th Cir. 1986). Further, federal and state laws impose licensing requirements for commercial truck drivers. See 49 U.S.C. § 31302; O.C.G.A. § 40-5-140. Indeed, when a worker has procured a state license, this fact weighs in favor of independent contractor status. See Lockett, 364 F. Supp. 2d at 1374 (citing Schwieger v. Farm Bureau Ins. Co., 207 F.3d 480, 485 (8th Cir. 2000)). Thus, the considerable skill and licensing requirements for Plaintiff's profession indicate that she is an independent contractor.

Turning to the third factor, Plaintiff provided the 1996 Freightliner truck, the equipment necessary to perform the work. Plaintiff also had to pay for all expenses associated with operating her truck such as fuel, oil, and maintenance. This factor favors the conclusion that Plaintiff is an independent contractor. See Lockett, 364 F. Supp. 2d at 1374 (citing Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1320 (S.D. Fla. 2001)).

As for factor number four, the longer the working relationship, the more likely the individual is an employee. Id. at 1375 (citing Wilson v. United Farm Bureau Mut. Ins. Co., 1995 WL 378521, *8 (S.D. Ind. June 15, 1995)). Plaintiff was only employed by BP Express for a

period of seven weeks. (Aff. of Plaintiff at ¶¶ 2, 10-12.) The short duration of the working relationship weighs in favor of a finding that Plaintiff is an independent contractor.

Factor number five examines the employer's method of payment. The method of payment in this case indicates that Plaintiff is an independent contractor. Plaintiff was paid per trip, rather than by the hour. Payment by the job completed, rather than a salaried or hourly payment, signals an independent contractor relationship. See Lockett, 364 F. Supp. 2d at 1375; Holloman, 740 F. Supp. at 1576.

Turning to factor number six, the fact that both BP Express and the Plaintiff had the ability to terminate the working relationship indicates that Plaintiff is an independent contractor. See Lockett, 364 F. Supp. 2d at 1374; Sica v. Equitable Life Assurance Soc'y of the U.S., 756 F. Supp. 539, 542 (S.D. Fla. 1990)(explaining that equal rights of both to fire and resign indicate independent contractor status). Here, the Lease Agreement provided that each party could terminate the agreement without notice. (Lease Agmt. ¶ 25.)

Next, Plaintiff was not afforded annual leave, did not accumulate retirement benefits, and BP Express did not pay

11

any social security tax in connection with Plaintiff. (Aff. of Castine at ¶¶ 10-11.) Thus, factors 7, 9, and 10 weigh heavily in favor of the conclusion that Plaintiff is not an employee. See McKensize v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987)(deduction of social security from plaintiff's commission checks indicated that plaintiff was not an independent contractor); Holloman, 740 F. Supp. at 1576 (employer's failure to pay social security taxes on plaintiff led court to conclude he was not an employee).

The final factor for the Court to consider is the intention of the parties. The terms of the agreement serve as the manifestation of the parties' intent. See Bates v. Variable Annuity Life Ins. Co., 200 F. Supp. 2d 1375, 1379 (N.D. Ga. 2002)(examining the contract terms to determine whether insurance agent is an independent contractor). Further, contract provisions that refer to Plaintiff as a "contractor" must be given great weight. Holloman, 740 F. Supp. 1571, 1577 (M.D. Ga. 1990).

Here, the intention of the parties could not be any clearer. The Lease Agreement clearly states that "the parties intend to create by this Agreement the relationship of COMPANY and INDEPENDENT CONTRACTOR and NOT that of EMPLOYER and EMPLOYEE." (Lease Agmt. ¶ 21.) The only

evidence before the Court of the parties' intention demonstrates that Plaintiff is an independent contractor.

In sum, the totality of the common law principles indicates that Plaintiff is an independent contractor. The Court acknowledges, however, that factor eight, whether the work is an integral part of the business of the employer, weighs in favor of an employee classification. Be that as it may, the overwhelmingly majority of the factors demonstrate an independent contractor relationship.

### C. Right of Control

Next, the Court will address whether BP Express had the right to control Plaintiff. Indeed, the employer's right to control "the means and manner of the worker's performance is the most important factor to review . . ." Cobb, 673 F.2d at 340. The Eleventh Circuit has given district courts guidance in determining whether an employer possesses the right of control: "If the employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." Cobb, 673 F.2d at 338 (citing Spirides v. Reinhardt, 613 F.2d 826, 831-32 (D.C. Cir. 1979)).

13

Here, BP Express did not have the right to control Plaintiff for several reasons. The Lease Agreement provided the Plaintiff would "determine the method, means and manner" of the hauling. Plaintiff controlled how many hauls she made each day and had the right to refuse any particular dispatch. BP Express exerted almost no control over the details of how Plaintiff completed her work; only making sure that she completed the hauls for which she was hired. See Lockett, 364 F. Supp. 2d at 1376 (noting that the defendants' lack of involvement in the daily details of the plaintiff's work aligned the plaintiff as an independent contractor).

In Cobb, the Eleventh Circuit affirmed the district court's finding that the plaintiff was an independent contractor. The district court found that there was no supervision of how the plaintiff's work was to be done; in fact, the plaintiff often hired other personnel to help him complete his work without approval of the defendant. Cobb, 673 F.2d at 342.

Similarly here, the Lease Agreement provides that the Contractor has the ability to "provide and furnish all drivers, helpers, and other persons necessary to properly perform the service called for in this agreement." (Lease Agmt. ¶ 8.) In fact, Plaintiff took advantage of this

14

provision, hiring her daughter to help her with her hauls. (Aff. of Plaintiff ¶ 3). Thus, like in Cobb, BP Express had very little input or supervision over the details of how Plaintiff completed her work, or who helped her to complete her work. The facts demonstrate that BP Express did not have the right to control Plaintiff's work.

### D. Economic Realities of the Situation

Finally, the Court must consider the economic realities of Plaintiff's situation. Under the "economic realities test," a worker is an employee if economically dependent on the business to which he renders service. Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1495 (11th Cir. 1993) (citing Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991); Fraiser v. Gen. Elec. Co., 930 F.2d 1004, 1008 (2d Cir. 1991))[4]. However, the economic realities of the situation do not control. Instead, they must viewed in light of the common law principles of agency and the right to control possessed by the employee. Cobb, 673 F.3d at 340-41. In other words, the focus of the inquiry remains on the employer's right to control the manner of the worker's performance. Lockett, 364 F. Supp.2d at 1379.

---

[4] The Daughtrey case dealt with a claim arising under the ADEA, but the ADEA and Title VII define "employee" identically, see Garcia, 104 F.3d at 1264, and both claims are analyzed under the hybrid economic realties test. See Daughtrey, 3. F. 3d at 1495.

15

Here, it is unrefuted that Plaintiff's earnings from BP Express were her primary source of income. Thus, Plaintiff was economically dependent on BP Express. Under the economic realities test, she would be deemed an employee.

However, in light of the fact that the majority of the common law factors mitigate in favor of an independent contractor classification, coupled with the fact that BP Express did not have the right to control the means and manner of her performance, the economic realities are not controlling here. The facts, when viewed in the light most favorable to the Plaintiff, lead this Court to conclude she is an independent contractor. As such, she cannot maintain this Title VII law suit. Because the Court grants summary judgment on Plaintiff's Title VII claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

Upon the foregoing, the Court finds that Defendants are entitled to summary judgment. Accordingly, Defendants' Motion for Summary Judgment (Doc. no. 5) is **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of

Defendants. The Clerk shall terminate all **deadlines** and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of November, 2008.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE